RECEIVED
FEB - 2 2017
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| JOSHUA OLIVER | CIVIL ACTION NO. 2:16-01582 |
| VERSUS | JUDGE JAMES T. TRIMBLE, JR. |
| DISA GLOBAL SOLUTIONS, INC., ET AL | MAG. JUDGE KAY |

### MEMORANDUM RULING

Before the court is "Defendant DISA Global Solutions, Inc.'s Memorandum in Support of Motion to Dismiss Pursuant to F.R.C.P. 12(B)(6)" (R. #14) wherein Defendant, DISA Global Solutions, Inc. ("DISA"), seeks to be dismissed from the instant lawsuit because Plaintiff's claims are prescribed.

### ALLEGATIONS

On October 12, 2010, Plaintiff, Joshua Oliver, reported to Drug Screens, Etc., for a pre-employment drug screen at the request of a company with whom he sought employment.[1] The test results showed positive for opiates.[2] Mr. Oliver alleges he spoke with someone and informed them he had a legal prescription that would account for the positive results, but instead of providing documentation as proof of the prescription, he sought employment elsewhere.[3]

In September 2015, Mr. Oliver alleges he applied for a job but was "not hired . . . because DISA sent the potential employer the same drug test results made subject in this lawsuit."[4]

---

[1] Petition for Damages, ¶ ¶ 1-3. R. #1.
[2] Id.
[3] Defendant's exhibit 2, Letter from J. Colonna to DISA Re: Josh Oliver. R. #
[4] Petition for Damages, ¶ 6.

1

Plaintiff has filed the instant lawsuit asserting claims of negligence against DISA for failing to change his positive result, and for defamation for allegedly reporting to Plaintiff's potential employers that Plaintiff tested positive for opiates.[5]

## RULE 12(B)(6) STANDARD

Fed. R. Civ. P. 8(a)(2) requires that pleadings which state one or more claims for relief must contain "...a short and plain statement of the claim showing that the pleader is entitled to relief..." This "notice pleading" requirement is balanced against Fed. R. Civ. P. 12(b)(6), which provides that a court may dismiss one or more claims when the pleader fails to state a claim upon which relief may be granted.

For the purpose of considering a motion to dismiss pursuant to Rule 12(b)(6), the court must take all well-pled factual allegations as true and must view them in the light most favorable to the plaintiff.[6] The pleading must allege facts which, when taken as true, raise the pleader's claim. A motion to dismiss for failure to state a claim should be denied unless "it appears to a *certainty* that the plaintiff would be entitled to no relief under any state of facts" alleged in the petition.[7]

Only those facts which are well-pleaded and state a "plausible claim for relief" must be accepted.[8] A claim is plausible when the court can reasonably infer from the facts that the defendant is liable to the plaintiff; a claim is not plausible when it only states conclusions of a

---

[5] Id., ¶ ¶ 10-13.
[6] In re Katrina Canal Breaches Litigation, 495 F.3d 191 (5th Cir. 2007) (internal citations omitted).
[7] Banco Contintental v. Curtiss Nat'l Bank of Miami Springs, 406 F.2d 510, 514 (1969)(quoting Arthur H. Richland Co. v. Harper, 302 F.2d 324, 325 (5th Cir. 1962)(citing Des Isles v. Evans, 200 F.2d 614, 615 (5th Cir. 1952); Millet v. Godchaux Sugars, Inc., 241 F.2d 264, 265 (5th Cir. 1957)).
[8] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

"formulaic recitation of the elements of a cause of action."[9] However, even those facts which are extremely doubtful are to be assumed correct.[10]

## LAW AND ANALYSIS

In his opposition, Mr. Oliver complains that the motion to dismiss relies on evidence that DISA has submitted. He suggests that the court exclude the evidence or convert the motion to a motion for summary judgment and dismiss it because discovery has not yet taken place.[11]

In response, DISA notes that it attached the following documents as exhibits: (1) a DISA Drug Test Result; (2) a letter from Plaintiffs Attorney to DISA regarding his claims; and (3) DISA's Membership Application Form signed by Plaintiff wherein he agreed to become a DISA member and authorized DISA to record his work-eligibility status.[12] DISA maintains that the Court can consider these documents without converting its motion to a motion for summary judgment because the documents are all of unquestioned authenticity, referred to in Plaintiff's Petition, and integral to Plaintiff's claims.[13] In General Retail Services, Inc. v. Wireless Toyz Franchise, LLC, citing Wright & Miller, the court provides us with guidance on how to treat exhibits attached to a motion to dismiss:

> [m]ost federal courts. . . have viewed the words "matters outside the pleadings" as including any written or oral evidence introduced

---

[9] Whitley v. Hanna, 726 F.3d 631, 638 (2009)(quoting Ashcroft, 556 U.S. at 678).
[10] Twombly, 550 U.S. at 555; Lindquist v. City of Pasadena, 525 F.3d 383, 386 (5th Cir. 2008).
[11] Citing Narcisse v. Turner Indus. Grp. LLC, 2012 U.S. Dist. LEXIS 60533, at *18 (E.D. La. Apr. 30, 2012).
[12] R. #14-2, !4-3 and 14-4.
[13] See Johnson v. PPI Tech. Servs., L. P., 2012 WL 3065499, at *2 (E.D. La. July 27, 2012)("uncontested documents referred to in the pleadings may be considered by the court without converting the motion to one for summary judgment, even when the documents are not physically attached to the complaint" and a "court also may consider documents attached to a motion to dismiss without converting it to a summary judgment motion if the documents are referred to in the complaint and are central to the plaintiff's claim")(citing 5C Wright & Miller Fed. Prac. & Proc. Civ. § 1366 (3d ed.)(documents not considered "matters outside the pleading for purposes of conversion" include "items of unquestioned authenticity that are referred to in the challenged pleading and are 'central' or 'integral' to the pleader's claim for relief."); Gen. Retail Servs. Inc. v. Wireless Toyz Franchise, LLC, 255 F. App'x 775, 785 (5th Cir. 2007)(same).

> in support of or in opposition to the motion challenging the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings. Memoranda of points and authorities as well as briefs and oral arguments in connection with the motion, however, are not considered matters outside the pleadings for purposes of conversion. The same is true for various types of exhibits that are attached to the pleadings, matters of which the district court can take judicial notice, and items of unquestioned authenticity that are referred to in the challenged pleading and are "central" or "integral" to the pleader's claim for relief.[14]
>
> And for our purposes, it is enough that submitting evidence in connection with a separate motion, involving different issues, does not constitute submission of evidence with a contemporaneously filed Rule 12(b)(6) motion to dismiss.[15]

The DISA Drug Test Result is referred to as Plaintiff's positive drug test result in Paragraph 3 on page 1 of Plaintiff's Petition.[16] There is no doubt the positive drug test result which is the basis for Plaintiff's lawsuit is integral to Plaintiff's claims.

The letter dated 9/25/15 from Plaintiff's first attorney to DISA is referred to in Paragraph 7, page 2 of Plaintiff's Petition wherein Plaintiff alleges he contacted DISA regarding the drug test results at issue.[17] Finally, Plaintiff's membership application is referenced tangentially in Paragraph 6 of the Petition wherein Plaintiff alleges that DISA sent a potential employer his drug test at issue in the lawsuit.[18] The membership application form is an integral document as it relates directly to DISA's alleged obligations to Plaintiff with respect to his drug test. Hence, DISA maintains that the authenticity of the three documents is not questioned, and therefore the

---

[14] Wright & Miller, supra, § 1366 (citations omitted).
[15] Benchmark Elecs. Inc. v. J.M. Huber Corp., 343 F.3d 719, 725-26 (5th Cir. 1980)(holding that an affidavit submitted with a partial motion for summary judgment did not justify converting a motion for judgment on the pleadings).
[16] Petition, ¶ 3, R. #1.
[17] Id. ¶ 7.
[18] Id. ¶ 6.

court may consider them without converting the motion to dismiss into a motion for summary judgment. Plaintiff has not challenged the authenticity of the three documents submitted with the motion to dismiss.

The first document – the Drug Test Result – was definitely referred to in the Petition and is certainly integral to this lawsuit. The letter from the attorney will not be considered by the court in this motion and the Membership Application signed by Mr. Oliver is tangentially referred to in the Petition and is also an integral part of this lawsuit. The court finds that it is not necessary to convert the motion to a motion for summary judgment.

*Prescription*

Plaintiff filed suit six (6) years after the drug test at issue. DISA moves to dismiss the instant lawsuit as untimely. The statute of limitations on Oliver's negligence claim is one year.[19] A court will look to "the time when a plaintiff knew or should have known that a cause of action arose or existed…."[20] Some courts have found that a plaintiff's cause of action stemming from an improper drug test analysis accrues when the plaintiff becomes aware or should have become aware of the potential effects on his employment.[21] DISA maintains that Mr. Oliver became

---

[19] Reggio v. E.T. I., 15 So.3d 956-57 (La. 12/12/08).
[20] Id.
[21] See Drake v. Whaley, 355 F.App'x 315, 318 (11 th Cirl 2009)(flight attendant's cause of action against airline's medical review officer and medical clinic, which alleged negligence and fraud concerning employee's drug test and termination, accrued at time that employee became aware that officer had received a report from a drug testing lab indicating that employee's urine sample was unsuitable for testing);Rigby v. Clinical Reference Lab., Inc., 995 F.Supp. 1217, 1223 (D. Kan. 1998)(nuclear industry employee's tort claims against drug-testing laboratories, stemming from his reported failure of drug test, accrued when employee's unescorted access to nuclear facility at which he worked was revoked based on test results, though employee only later learned of his unemployability in nuclear industry as whole); Brown v. City of Pompano Breach, 969 F.Supp. 1317, 1318 (S.D. Fla.1997), aff'd, 182 F.3d 936(11th Cir. 1999)("If [plaintiff] was not using any illegal drugs at the time that that he was tested, then he should have known immediately upon receipt of the positive results that something was wrong with the test. In such a situation, 'a person with a reasonably prudent regard for his rights' would realize that the result was incorrect and that his rights might have been violated.") (internal citations omitted).

aware of the potential adverse effect of his failed drug test when he received the positive results within a few days of taking it—somewhere around October 12, 2010. Mr. Oliver filed this lawsuit on November 15, 2016.

Mr. Oliver argues that his claims have not prescribed because DISA continues to publish his "positive test results" and thus, commits a continuous tort each day. Mr. Oliver agrees that he cannot recover damages from any injury suffered over one year before the lawsuit was filed, but he argues that he can recover damages because of the continual destruction of his professional reputation created by DISA's continual defamatory conduct.

The court finds that Mr. Oliver knew in October 2010 that the Drug Test showed a positive result. Therefore the one year statute of limitations for both the negligence claim and the defamation claim began in October 2010. Plaintiff filed his lawsuit on October 12, 2016. Accordingly, we find that DISA is entitled to dismissal with prejudice because this suit was filed outside the limitations period.

*Negligence claim*

Even though the court has concluded that Mr. Oliver's claims for negligence and defamation are prescribed, we will further address DISA's motion as to its proposed dismissal of the negligence and defamation claims, substantively. DISA maintains that plaintiff has not plead all of the elements of a negligence claim. Under Louisiana's duty-risk analysis, plaintiff must establish;

> (1) Proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element), (4) proof that the

6

defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element).[22]

DISA maintains that Mr. Oliver has failed to plead facts to indicate that DISA owed a duty to change the results of his drug test, or that DISA breach a duty owed to Mr. Oliver. DISA maintains a database which continually lists whether a person has failed a DISA-based drug test or not. DISA does not perform drug screenings; DISA takes the drug screen results, translates those into a label they then place on each person in their database, and publicizes that database to employers who contract with DISA for such information.[23] As noted by DISA, only the medical review officer has the authority to change the results.[24] Accordingly, the court finds that DISA owed no duty to Mr. Oliver because it has no authority to change the test results, and DISA did not breach any duty.

*Defamation claim*

A defamation claim requires five (5) elements: (1) defamatory words, (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury.[25] If even one of the elements of the tort is lacking, the cause of action fails.[26] Even when a plaintiff makes a prima facie case showing the elements of defamation, recovery may be precluded if the defendant shows that the statement was true, or that it was protected by an absolute or qualified privilege.[27] Words, which, by their nature, injure persons in their occupation or reputation are defamatory per se, alleviating

---

[22] Long v. State ex rel. Dept. of Transp. And Dev. 916 So.2d 87, 101 (La. 2005).
[23] See Plaintiff's opposition, p. 3. R. #22.
[24] See Petition, ¶ 7. R. #1.
[25] Brannan v. Wyeth Laboratories, Inc., 526 So.2d 1101, 1105 (La. 1988).
[26] Douglas v. Thomas, 728 So.2d 560, 562 (La.App. 2 Cir. 2/24/99).
[27] Costello v. Hardy, 864 So.2d 129, 141 (La. 1/21/04).

the plaintiff of the need to prove malice, injury, or that the words were defamatory due to context.[28] DISA maintains that Mr. Oliver has not plead falsity and injury. Mr. Oliver maintains that DISA defamed him because DISA sent his new job prospects his positive test results, thus implying that he was a "drug offender" and/or a "drug user."[29]

Mr. Oliver relies on Narcisse v. Turner Indus. Group, LLC,[30] wherein the court held that "[c]riminal accusations, here use of cocaine, are defamatory per se, and, as a result, malice and falsity are presumed. . . the publication of the test results in the various national databases, allegedly with Turner's consent, constitutes an unprivileged publication to a third party."[31] In Narcisse, the motion to dismiss was filed by Turner Industries Group, LLC, the plaintiff's employer. The basis of the suit against Turner was that Turner, who administered the hair drug test to its employees was negligent in the manner with which they collected the hair specimen—the collection process was in an unsanitary and unsterile manner which may have resulted in the alleged false positive test result. Turner was not entitled to the privilege provided by section 49:1012 of the Louisiana Drug Testing Statute because Turner failed to comply with the Statute during the collection process. Thus, the court reasoned that because discovery had not been taken, Turner could not assert that the test result was in fact accurate as a defense. The court concluded that plaintiffs had set forth sufficient facts to sustain their defamation claim, and defendant had not presented a defense in the form of a qualified privilege or the truthful nature of the statements to warrant dismissal. Such is not the case here. The positive Drug Test Result

---

[28] See Lemeshewsky v. Dumaine, 464 So.2d 973, 975 (La.App. 4th Cir. 1985)(citing Cangelosi v. Schwegmann Bros., Etc., 390 So.2d 196 (La. 1980)).
[29] Petition, ¶ 13, R. #1.
[30] 2012 U.S. Dist. LEXIS 60533 (E.D. La. 4/30/2012).
[31] Id. *17.

was accurate, and there was no negligence alleged as to the manner in which the specimen was collected or analyzed. Furthermore, DISA did not collect the specimen, nor did it analyze or produce the Drug Test Results. DISA only published in its database the Drug Test Results as determined by the Medical Review Officer.

Mr. Oliver further relies on <u>Whiting v. DISA Global Solutions</u>,[32] a district court case where the court denied a motion to dismiss plaintiff's claims of interference with prospective contractual relations and Unfair Trade Practices Act. Mr. Whiting gave a urine specimen to Reliance on September 16, 2014. Quest Diagnostics in West Hills, California analyzed the specimen and reported the results as negative with the exception of cocaine metabolites. Mr. Whiting, suspecting that the result was wrong because he was not a cocaine user, voluntarily submitted a hair follicle sample on September 26, 2014 at Basin Occupational Urgent Care. This Specimen was sent to the same Quest Diagnostics and the results were negative for all tested substances, including cocaine and cocaine metabolites.

Mr. Whiting provided the hair follicle testing to DISA and requested that it remove the false positive results from its records. DISA refused to change the results. The court refused to dismiss plaintiff's claims of interference with prospective contractual relations because Mr. Whiting had alleged that DISA's misrepresentation had discouraged prospective employers in the industry from hiring him. The court further refused to dismiss the Unfair Trade Practice claims because Mr. Whiting had alleged that DISA made misleading representations to prospective employers about his drug test results by continuing to represent that he tested positive for

---

[32] Civ. Action 15-099 (D.N.M. 09/30/2015).

cocaine when a reliable test indicated that the positive result was inaccurate, and DISA knew that the false positive result was misleading to its clients, yet it disclosed that information anyway.

DISA remarks that in his Petition for Damages, Mr. Oliver admits that he used opiates which resulted in the positive drug test results.[33] DISA points out that Mr. Oliver fails to state any facts that DISA is at fault for publishing true facts for which Plaintiff consented, and facts for which DISA has no duty or authority to change. Plaintiff cites DOT Regulation 49 C.F. R. § 40.149[34]

---

[33] Id. ¶ 5.
[34] 49 C.F.R. § 40.149 provides in pertinent part, the following:
    Subpart G. Medical Review Officers and the Verification Process

    May the MRO change a verified drug test result?
(a) As the MRO, you may change a verified test result on in the following situations:
  (1) When you have reopened a verification that was done without an interview with an employee (see § 40.133(d)).
  (2) If you receive information not available to you at the time of the original verification, demonstrating that the laboratory made an error in identifying (e.g., a paperwork mistake) or testing (e.g. a false positive or negative) the employee's primary or split specimen. For example, suppose the laboratory originally reported a positive test result for Employee X and a negative result for Employee Y. You verified the test results as reported to you. Then the laboratory notifies you that it mixed up the two test results, and X was really negative and Y was really positive. You would change X's test result from positive to negative and contact Y to conduct a verification interview.
  (3) If, within 60 days of the original verification decision—
    (i) You receive information that could not reasonably have been provided to you at the time of the decision demonstrating that there is a legitimate medical explanation for the presence of drugs(s)/metabolite(s) in the employee's specimen; or
    (ii) You receive credible new or additional evidence that a legitimate medical explanation for an adulterated or substituted result exists.
Example to Paragraph (a)(3): If the employee's physician provides you a valid prescription that he or she failed to find at the time of the original verification, you may change the test result from positive to negative if you conclude that the prescription provides a legitimate medical explanation for the drug(s)metabolite(s) in the employee's specimen.
  (4) If you receive the information in paragraph (a)(3) of this section after the 60-day period, you must consult with ODAPC prior to changing the result.
                     \*\*\*

that allows a *Medical Review Officer* to change the results of a drug screen within a very limited time period (60 days), but as noted by DISA, this regulation applies to the Medical Review Officer, not DISA. In other words, DISA is not the proper entity/party to change the results of Mr. Oliver's drug screen. DISA is only publishing what is provided by the Medical Review Officer and as to DISA, the published drug screen is not false information[35] because Mr. Oliver did not follow up with the request to provide a valid prescription, and he failed to follow the proper procedure mandated in 49 C.F.R. § 40.149 which would have possibly permitted the Medical Review Officer to change the Drug Test Results. Mr. Oliver even asserted in his complaint that only the Medical Review Officer could change the outcome of Plaintiff's drug test.[36] Furthermore, the Drug Test Results are governed by statute which limits the time with which a Medical Review Officer can change the results.[37] Mr. Oliver did not comply with that statute despite the fact he knew that the test result was positive for opiates which would result in his being listed as "Inactive" in DISA's work eligibility database. Accordingly, the court finds that Plaintiff has failed to assert in his petition that the information published by DISA was false which is fatal to Mr. Oliver's defamation claim.

---

(b) You are the only person permitted to change a verified test result, such as a verified positive test result or a determination that an individual has refused to test because of adulteration or substitution. This is because, as the MRO, you have the sole authority under this part to make medical determinations leading to a verified test (e.g., a determination that there was or was not a legitimate medical explanation for a laboratory test result). For example, an arbitrator is not permitted to overturn the medical judgment of the MRO that the employee failed to present a legitimate medical explanation for a positive, adulterated, or substituted test result of his or her specimen.

[35] In his Petition, Mr. Oliver admits that the Drug Test Results were correct because he was taking prescribed hydrocodone. Petition, ¶ ¶ 1-5.
[36] Petition, ¶ 7. R. #1.
[37] 49 C.F.R. 40.149.

*Injunction*

In his opposition to the instant motion, Mr. Oliver requests an injunction against DISA. Mr. Oliver seeks to enjoin DISA from continuing to publish Plaintiff's Drug Test Results in their database. In order for this court to issue an injunction, Plaintiff must establish the following four elements: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.[38]

The court declines to issue an injunction against DISA because Mr. Oliver has failed to show a substantial likelihood of success on the merits. Furthermore, Mr. Oliver has failed to show a threat for irreparable injury; Mr. Oliver reveals that despite the alleged published Drug Test Results, he has been employed for the past six (6) years. Accordingly, Mr. Oliver's request for an injunction will be denied.

## **CONCLUSION**

For the reasons previously stated, the Court finds that Mr. Oliver's petition fails to state a claim because Plaintiff's negligence and defamation claims are prescribed, and DISA is entitled to judgment as a matter of law. The Court further finds that substantively, Mr. Oliver has failed to allege facts to establish the necessary elements of negligence and defamation. We recognize that Mr. Oliver requests in the alternative, that we allow him to amend his petition, but the Court declines to grant this request because we find that such an attempt would be futile given the fact

---

[38] Planned Parenthood Gulf Coast, Inc. v. Kliebert, 141 F.Supp.3d 604, 635 (M.D. La. 2015) aff'd sub. Nom. Planned Parenthood of Gulf Coast, Inc. v. Gee, 837 F.3d 477 (5th Cir. 2016)(citing Byrum v. Landreth, 566 F.3d 442, 445 (5th Cir. 2009).

that per 49 C.F.R. § 40.149, DISA has no authority to change the Drug Test Results. Finally, the court will deny Mr. Oliver's request for an injunction for the reasons stated herein.

**THUS DONE AND SIGNED** in Alexandria, Louisiana on this 2nd day of February, 2017.

_____
**JAMES T. TRIMBLE, JR.**
**UNITED STATES DISTRICT JUDGE**